UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAMAN LNU-VI (A# 226-128-664),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-4504 DJC SCR<br><br>ORDER AND<br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through appointed counsel with this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The in forma pauperis application shows Petitioner is unable to afford the costs of suit. Accordingly, the application to proceed in forma pauperis (ECF No. 3) is granted. See 28 U.S.C. § 1915(a).

For the reasons provided below, the undersigned recommends that the first amended petition be granted on Petitioner's substantive due process claim (Count I) and that Respondents be ordered to immediately release him from custody, subject to reasonable conditions of release.

**FACTUAL AND PROCEDURAL HISTORY**

**I. Factual Background**

Petitioner is a citizen and national of India who entered the United States without inspection in August 2024 at the age of 18. ECF No. 15 at 3, ¶¶ 12-13. After he was encountered

and detained by immigration officials, Petitioner applied for asylum and special immigration juvenile status. After two-months of detention, Petitioner was released on his own recognizance and enrolled in the Intensive Supervision and Appearance Program ("ISAP"). Id. ¶ 13.

On August 6, 2025, Petitioner was arrested for petty theft. ECF No. 15 at 3, ¶ 14. According to the arrest report, Petitioner was caught on camera walking out of Macy's with approximately $170 in clothing without paying. ECF No. 21 at 46. Petitioner told the police he didn't know the bag contained stolen items and that he hadn't stolen anything. Id. On November 6, 2025, Petitioner was charged with one count of misdemeanor petty theft in Tulare County Superior Court. On December 11, 2025, the Superior Court offered Lnu Vi diversion. Id.

On December 14, 2025, Petitioner voluntarily reported to Immigrations and Customs Enforcement's ("ICE") Bakersfield Office in accordance with his ISAP conditions. ECF No. 15 at 4, ¶ 15. ICE detained Petitioner without bond pursuant to 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act ("LRA"). Id., ¶¶ 15-16. On January 22, 2025, an immigration judge ("IJ") denied Petitioner's request for custody redetermination based on his LRA-qualifying arrest or, in the alternative, the Board of Immigration Appeals' ("BIA") ruling in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). ECF No. 21 at 32-34. On March 23, 2026, an IJ ordered Petitioner removed to India and denied his applications for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT"). Id. at 35-39. Petitioner appealed the ruling to the Board of Immigration Appeals ("BIA"). The appeal remains pending according to his Executive Office of Immigration Review ("EOIR") Case Information Page.[1] He is currently detained at the Golden State Annex Immigration Detention Center, within this judicial district. Id., ¶ 17.

## II. Procedural History

This is Petitioner's second immigration habeas petition in this Court. Petitioner's first petition, filed through counsel in February 2026, challenged his detention without bond under the Due Process Clause of the Fifth Amendment. Lnu-Vi v. Warden, et al., No. 1:26-cv-02048 DJC

[1] The undersigned takes judicial notice of Petitioner's EOIR Case Information Page, at https://acis.eoir.justice.gov/en/caseInformation. See Fed. R. Evid 201(b)-(c).

JDP (E.D. Cal.) ("Lnu-Vi I"). After determining Petitioner was detained pursuant to 8 U.S.C. § 1226(c)(1)(E), the Court denied the petition because his detention, which had yet to reach five months, was still within the brief, constitutionally-permissible period contemplated by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003). Lnu-Vi I, No. 1:26-CV-2048-DJC-JDP, 2026 WL 1162729, at *3 (E.D. Cal. Apr. 29, 2026), report and recommendation adopted, No. 1:26-CV-2048-DJC-JDP, 2026 WL 1457379 (E.D. Cal. May 22, 2026).

Petitioner, proceeding pro se, filed this second § 2241 petition and motion for temporary restraining order ("TRO") on June 11, 2026, again challenging his detention without bond under the Due Process Clause of the Fifth Amendment. ECF No. 1. Petitioner further alleged that his custodians refuse to treat painful eye and testicular conditions that each require immediate surgery. Id. at 6; see also id. at 9-34 (medical records). Petitioner requests immediate release and an order for emergency specialist care. Id. at 7. Due to the complexity of the legal issues involved, the assigned District Judge appointed counsel to Petitioner and later referred the matter to the undersigned for all further proceedings. ECF Nos. 9, 17.

Petitioner, through appointed counsel, filed a first amended petition ("FAP") for writ of habeas corpus on July 30, 2026. ECF No. 15. Petitioner reiterates that officials have failed to treat his serious medical conditions, including keratoconus, an eye condition that causes visual impairment that required Petitioner to undergo surgery in 2023; a varicocele testicular cyst, which causes chronic pain in the testicles and requires urgent referral to a urologist for proper treatment and diagnosis; bloody stools; and anxiety/depression. ECF No. 15 at 4, ¶¶ 17-19.

The FAP raises three claims for relief: (1) Violation of Fifth Amendment (Substantive Due Process); and (2) Violation of the Fifth Amendment (Procedural Due Process); and (3) Violation of the Fifth Amendment (Substantive Due Process—Medical Conditions).[2] ECF No. 15 at 6-16.

---

[2] Petitioner's Third Count relies on Morales Sumano v. Chestnut, et al., No. 1:26-CV-04954-KES-CDB (HC), 2026 WL 2177112 (E.D. Cal. July 28, 2026). There, Judge Sherriff determined substantive due process compelled the release of a pregnant detainee with a severe mental health condition. Citing cases from the COVID-19 pandemic, Judge Sheriff held that "detention may be excessive in relation to a legitimate purpose" as a matter of substantive due process "if the conditions at a detention facility threaten a detainee's life," and concluded the "petitioner's detention presents a significant risk of death to both her and her fetus, given the circumstances of

By way of relief, Petitioner requests immediate release under standard conditions of supervision should the Court grant either Count One or Three. If the Court rejects those claims but agrees with his procedural due process claim, Petitioner requests immediate release and an order enjoining Respondent from re-detaining him absent a pre-deprivation bond hearing on no less than seven days of notice before a neutral arbiter. Id. at 16.

Respondent filed a motion to dismiss the petition as impermissibly successive of Lnu-Vi I pursuant to 28 U.S.C. § 2244. ECF No. 21. Respondents maintain that the FAP's claims have already been adjudicated, with the exception of the medical-related claims, which could have been raised in Lnu-Vi I. Id. at 2, n.1. Respondents further argue that Petitioner's § 1226(c) detention is not unconstitutionally prolonged. Id. at 4-5. Regarding Petitioner's substantive due process claims, Respondents assert that they are not responsible for any delay in Petitioner's removal proceedings or BIA appeal and that Petitioner's medical-care claims are not supported in the record and, regardless, do not sound in habeas. Id. at 6-7 (citing, *inter alia*, Pinson v. Carvajal, 69 F.4th 1059, 1065 (9th Cir. 2023)).

In his traverse/opposition to Respondents' motion to dismiss, Petitioner argues that the FAP is not impermissibly successive and points to his now prolonged detention and deteriorating health as changed circumstances that give rise to new, as-applied claims for relief. ECF No. 22 at 2-3. Petitioner further rejects Respondents' argument that his § 1226(c) detention is not subject to constitutional limits and that his medical-related substantive due process claim does not sound in habeas. Id. at 4-6.

## LEGAL STANDARDS

### I. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are

---

petitioner' high-risk pregnancy, her serious mental health issues, and the conditions and lack of adequate treatment within the detention facility." Morales Sumano, 2026 WL 2177112, at *4.

"seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

////

**II. Statutory Immigration Framework**

Congress enacted the LRA in January 2025, expanding mandatory detention to include anyone who (1) is inadmissible pursuant to paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" See Pub. L. No. 119–1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)).

There is no basis to depart from the finding in Lnu-Vi I that Petitioner is subject to mandatory detention under § 1226(c)(1)(E), as amended by the LRA. The Act's first condition is met because immigration officials charged Petitioner as inadmissible under §§ 1182(a)(6)(A)(i). ECF No. 21 at 19. As the Court explained in Lnu-Vi I, Petitioner's arrest and charge under California Penal Code § 484 satisfies the second condition. Lnu-Vi I, 2026 WL 1162729, at *2. Although an IJ has since ordered Petitioner removed to India, his detention has not shifted to 8 U.S.C. § 1231(a) because the removal order is not administratively final. See 8 U.S.C. § 1231(a)(1)(B); see also Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (a removal order becomes administratively final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order") (citing 8 U.S.C. § 1101(a)(47)(B)). Accordingly, Petitioner remains subject to mandatory detention under § 1226(c)(1)(E).

**ANALYSIS**

**I. Successive Abuse of Writ Doctrine**

The undersigned begins with Respondents' motion to dismiss pursuant to the successive abuse of writ doctrine. Respondents seek dismissal pursuant to 28 U.S.C. § 2244(a), which states:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a).

Section 2244's bar against successive habeas petitions does not apply to immigration habeas petitions filed pursuant to 28 U.S.C. § 2241. See Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 2000) (finding § 2244 bar inapplicable because the petitioner's immigration detention "was not pursuant to a judgment of a court of the United States"). This alone is sufficient to defeat Respondents' motion, which relies exclusively on § 2244 as the basis for dismissal. See Hilario M.R. v. Warden of the California City Det. Facility, No. 1:26-CV-01154-JLT-EPG-HC, 2026 WL 1983926, at *2 (E.D. Cal. July 9, 2026) (denying motion to dismiss immigration habeas petition pursuant to § 2244 for the same reasons).

However, to ensure a full record, the undersigned will also consider the common law doctrine of abuse of the writ that the Ninth Circuit has determined may serve as a bar to successive habeas petitions filed pursuant to § 2241. See Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011). "The doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" Alaimalo, 645 F.3d at 1049 (9th Cir. 2011) (quoting Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 538 (9th Cir. 1998) (en banc), overruled in part on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003)). "Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain that claim." Id.

The undersigned agrees with Petitioner that his due process claims here are fundamentally different from those the Court rejected in his first petition. Petitioner brought the first petition on February 20, 2026, just two months into his detention, and challenged his arrest as a lawful basis for mandatory detention under § 1226(c).[3] The Court rejected that argument and upheld the constitutionality of Petitioner's brief detention under Demore. The petition did not mention

[3] See, e.g., Lnu-Vi I, ECF No. 1 at 7, ¶ 36 ("Because Petitioner is detained without a lawful statutory basis and without access to the bond procedures afforded to individuals detained under § 1226(a), his continued confinement violates substantive due process."); id. at 8, ¶ 43 ("By denying Petitioner access to a bond hearing based on an erroneous statutory interpretation [of § 1226(c)] . . . Respondents have deprived Petitioner of procedural due process.").

Petitioner's medical needs and its exhibits—whether reliable or not—reflected he was in "good health" at the time of his arrest on December 14, 2025. Id. at 17 (Form I-213). Here, Petitioner does not dispute he is subject to § 1226(c) but challenges the constitutionality of his detention in light of circumstances that were not present in February 2026—i.e., his now prolonged detention and deteriorating physical health. See Hilario M.R., 2026 WL 1983926, at *2 (denying common law abuse of the writ challenge and endorsing petitioner's argument that "a prolonged detention claim is inherently dynamic—it evolves as the detention grows longer.").

Accordingly, because Plaintiff could not have brought the now-operative due process claims in the first petition, Respondents' motion to dismiss pursuant to the successive abuse of write doctrine should be denied. The undersigned will turn next to analyzing Petitioner's claims.

**II. Substantive Due Process Analysis**

Count I of the petition alleges that Petitioner's detention has become punitive in violation of his right to substantive due process. ECF No. 15 at 6-12. Petitioner particularly emphasizes his "lack of access to minimally reasonable medical care" as evidence that his "conditions of confinement are similar, if not worse than criminal detention." Id. at 12.

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of criminal pretrial detention, "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). By the same token, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla, 704 F. Supp. 3d at 1172; see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

Petitioner's Count I tracks the five-factor balancing test developed by Judge Pitts of the

Northern District of California in Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) "(Doe v. Becerra II"): (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. Several judges of this Court, including the undersigned, have adopted this framework in resolving similar substantive due process claims. See Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025); Rivas Campos v. Chestnut, No. 1:26-CV-01330 DJC SCR, 2026 WL 1816190 (E.D. Cal. June 24, 2026), report and recommendation adopted sub nom. Campos v. Chestnut, No. 1:26-CV-01330 DJC SCR, 2026 WL 1899541 (E.D. Cal. July 1, 2026). Accordingly, the undersigned will proceed to the five-factor analysis.

**A. Factor Analysis**

**i. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Id. (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

Petitioner's mandatory detention has reached nearly nine months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore [v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"); see also Rodriguez Diaz, 53 F.4th at 1207 (noting the Ninth Circuit has "previously referred to detentions longer than six months as 'prolonged['] . . . in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."). Petitioner's pending BIA appeal and potential petition for review before the Ninth Circuit further suggest that he "faces an undetermined, but

likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also Tavurov v. Noem, 819 F. Supp. 3d 1209, 1221 (W.D. Wash. 2026) (noting "BIA appeals can take over six months" and that "[a]ccording to the Ninth Circuit's public website, it takes approximately 6 to 12 months from the date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case").

Respondents argue that Petitioner's detention is not "unduly prolonged" and point to cases where courts have upheld the constitutionality of longer periods of § 1226(c) detention. ECF No. 21 at 4-5. These authorities are materially distinguishable in that the petitioners had received bond hearings before an IJ earlier in their detention. See, e.g., Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025), dismissed sub nom. Espinoza v. Becerra, No. 25-4147, 2026 WL 1008510 (9th Cir. Mar. 10, 2026) (finding Petitioner's 30-month detention did not violate substantive due process where the Petitioner had received a bond hearing before an IJ where the government bore the burden of proof by clear and convincing evidence.); Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008) (upholding constitutionality of 41-month detention where the petitioner received three bond hearings).

Nevertheless, while Petitioner's detention is prolonged, its current duration, standing alone, does not violate substantive due process. See Torres, 995 F.3d at 699 (identifying 21 months of pre-trial detention as "likely approaching the outer bounds of due process"). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original). Thus, while the current duration of Petitioner's detention does not necessarily lean heavily toward a substantive due process

violation, the undersigned must weigh it against the remaining factors.

**ii. Government Contribution to Delay**

Relevant to this factor is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also Gelfuso, 838 F.2d at 359 (finding the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued").

Petitioner argues that the government failed to timely file a brief in Petitioner's BIA appeal, which will likely contribute to the delay in his removal or release. ECF No. 15 at 9. Respondents contend that it is within their discretion to not file responsive briefs before the BIA and that their failure to do so did not contribute to any delay in Petitioner's removal proceedings. ECF No. 21 at 6. The undersigned agrees there is no record evidence that Respondents' failure to file a brief contributed to delay. As Petitioner "has no information about any additional delay caused by the government," ECF No. 15 at 9, the second factor is neutral.

**iii. Evidence of Flight and Danger Risk**

Determining whether Petitioner's prolonged detention has become excessive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

Petitioner is subject to § 1226(c)(1)(E) because of his August 6, 2025, arrest for petty theft in violation of Penal Code § 484. He has yet to receive a bond hearing. Petitioner maintains that he has no other criminal record and that the Superior Court's offer of diversion shows that the Superior Court did not believe he was a danger to the community. ECF No. 15 at 9. Petitioner further points to his release on recognizance shortly after entering the United States as evidence that immigration officials believed he was not a danger to the community at that time. Respondents did not refute Petitioner's arguments or otherwise address danger in their motion to dismiss. While the alleged theft raises some potential concerns, the undersigned agrees with

Petitioner that the Superior Court's recommendation of diversion indicates that he is not a danger to the community.

As for flight risk, Respondents submit evidence that Petitioner missed virtual home visits on three occasions (January 27, 2025, July 14, 2025, and September 8, 2025) in violation of the terms of his release. ECF No. 21 at 25-29. However, viewed in the totality of Petitioner's compliance with release requirements, the undersigned does not find the violations point to flight risk. The violation logs note that the case specialist was still able to reach Petitioner by phone during the latter two visits, verify his location, and complete "virtual violation follow-up office visits." Id. at 28-29. Moreover, ICE detained Petitioner during a routine, in-person check-in on December 14, 2025, months after the three alleged violations. Petitioner's pending applications for asylum and for special immigration juvenile status provide further incentive for him to remain compliant with supervision requirements. In sum, his petty theft arrest notwithstanding, the record reflects that Petitioner presents a minimal risk of danger or flight. Accordingly, this factor supports a finding that his now nine-month detention without bond is punitive.

**iv. Alternatives to Detention**

The next factor considers "whether the government's interests in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh." Doe v. Becerra II, 732 F. Supp. 3d at 1088. If they can, "then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive." Id.

Respondents deny that alternatives to detention are relevant at all to this inquiry, arguing that "[d]ue process does not require immigration courts consider conditional release when determining whether to continue to detain an alien § 1226(c)." ECF No. 21 at 5 (quoting Martinez v. Clark, 124 F.4th 775, 786 (9th Cir. 2024)). The undersigned disagrees and is persuaded by Magistrate Judge Grosjean's reasons for rejecting this same argument in a substantive due process challenge to immigration detention:

> Martinez concerned a *procedural* due process claim, and "the substantive component of the [Due Process] Clause ... protects individual liberty against 'certain government actions *regardless of the fairness of the procedures used to implement them.*'" Collins [v. Harker Heights, 503 U.S. 115, 125 (1992)] (emphasis added) (quoting Daniels [v. Williams, 474 U.S. 327, 331 (1986)]). Therefore, in considering

> Petitioner's substantive due process claim, the Court finds that it may consider alternatives to detentions.

Doe v. Chestnut, 810 F. Supp. 3d at 1198 (emphasis in original).

Here, Petitioner cites ISAP components, including GPS tracking (e.g., ankle monitors), a smartphone app, or reporting by telephone, as viable alternatives to detention. ECF No. 15 at 10. Given that Petitioner presents a minimal danger or flight risk and demonstrated substantial compliance with his prior ISAP terms, the undersigned agrees that the government's legitimate interests can be adequately protected through the reinstatement of similar methods of supervision.

**v. Conditions of Confinement**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'").

Petitioner maintains that he suffers from keratoconus, which affects the cornea of both eyes and has caused him vision impairment that has worsened during his detention. ECF No. 15 at 11. ICE has refused to provide an ophthalmologist to examine his eyes, even though the condition required surgery in 2023 and instead offered him eye drops, which are ineffectual. Id. Most recently, in the traverse, Petitioner's counsel reports that Petitioner vision has deteriorated in his left eye and is now completely blurry. Second Martikan Decl., ¶ 2, ECF No. 22 at 7. Petitioner also suffers from a varicocele testicular cyst that causes him chronic pain and requires referral to a urologist for proper treatment and diagnosis via ultrasound. ECF No. 15 at 11. Petitioner conveyed in the traverse that he has since received the ultrasound, but that a medical care provider at the Golden State Annex told him that he needs testicular surgery and that his condition could render him infertile if untreated. Second Martikan Decl., ¶ 2, ECF No. 22 at 7. Petitioner has also experienced bloody stools, anxiety, and depression, for which the facility has only provided him with Preparation H and trazadone. ECF No. 15 at 11.

Petitioner asserts that his experiences are consistent with the reports of "prison-like"

conditions at the California City Detention Facility, where he was detained up until a few weeks ago. He cites a May 2026 report from the California Department of Justice that described how detainees are subject to long lock down periods in cells, excessive headcounts, verbal abuse from staff, extremely cold temperatures inside the building, leaks, and lack of weather-appropriate clothing. Cal. Dep't of Justice, Immigration Detention in California, 143-144 (May 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf. The authors also detailed inadequate healthcare staffing and resources, including "multiple instances in health care records and detainee interviews of failures to give detainees access to outside specialists." Id. at 144. As for Petitioner's current facility, the Golden State Annex, the Department of Justice reported that "[d]etainees with existing or ongoing medical or mental health concerns experienced inconsistent access to timely medical care." Id. at 56. Petitioner also cites to a series of court decisions regarding the carceral conditions in the facilities. See, e.g., Gomez Ruiz v. U.S. Immigr. & Customs Enf't, No. 3:25-CV-09757-MMC, --- F. Supp. 3d. ----, 2026 WL 851980, at *7 (N.D. Cal. Mar. 27, 2026) (granting motion for preliminary injunction where the plaintiffs "established they are likely to succeed on their claim that medical care at [California City] violates the Fifth Amendment or, at the very least, they have raised serious questions going to the merits of that claim."); Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025) (noting allegations that the conditions at California City were "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent"); Doe v. Chestnut, 810 F. Supp. 3d at 1201 ("[T]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions [. . .] in state prison.").

Respondents oppose Petitioner's medical concerns on grounds that such claims do not sound in habeas despite Petitioner's request for release.[4] ECF No. 21 at 6-7. Their arguments,

---

[4] Respondents' argument that Petitioner's medical issues are not supported by the record (ECF No. 21 at 6) is not well taken. Petitioner's appointed counsel filed a motion for limited discovery (ECF No. 10) after Respondents' counsel refused to produce Petitioner's medical records. See First Martikan Decl. ¶¶ 2-3, ECF No. 19 at 4. The undersigned convened a hearing on the matter, during which Respondents' counsel represented that they would not contest Petitioner's concerns regarding inadequate medical care. Based on that representation, the undersigned decided not to

rooted in the Ninth Circuit's Pinson decision, are unpersuasive. In Pinson, the Ninth Circuit held that "the proper analytical tack when determining whether actions . . . are at the core of habeas is to consider *why* release from confinement is necessary to remedy the underlying alleged violation." Pinson, 69 F.4th at 1072 (emphasis in original). Here, Petitioner seeks release through Count I because his detention is punitive. His alleged inadequate medical care is just one "relevant factor in determining whether civil detention remains civil rather than punitive (and therefore permissible)." Sumano, 2026 WL 2177112, at *7 (quoting Doe v. Becerra, 723 F. Supp. 3d 688, 691 n.1 (N.D. Cal. 2024)). "Because a person in punitive civil detention is therefore 'in custody in violation of the Constitution or laws or treaties of the United States,' a petition seeking release from the unlawful detention sounds squarely in habeas." Sorio v. Hermosillo, No. 2:25-CV-02492-TL, 2026 WL 413530, at *8 (W.D. Wash. Feb. 13, 2026) (quoting 8 U.S.C. § 2241(c)(3)).

There is nothing novel about evaluating immigration detention conditions in terms of substantive due process. The Ninth Circuit has long held that civil detention may violate substantive due process when it is excessive in relation to its legitimate purpose or used to meet objectives that could be accomplished through less harsh means:

> [U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Wolfish, 441 U.S. at 535, 99 S.Ct. 1861. We have thus held that "a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" Id. at 933–34 (alteration accepted) (first quoting Demery v. Arpaio, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Wolfish, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021); see also Perez v. Wolf, 445 F. Supp. 3d 275, 295 (N.D. Cal. 2020) (holding, during COVID-19 pandemic, that an immigration detainee's detention was excessive in relation to the government's purposes because

---

order that they produce the requested medical records. ECF No. 14.

of his respiratory health risks); Sumano, 2026 WL 2177112, at *4 (collecting cases). By narrowly construing Petitioner's claim as a challenge to the conditions of his confinement, "Respondents miss the moment of Petitioner's claim: that it is the conditions and ancillary deprivations he is being subjected to, by virtue of the nature of the medical treatment provided to him, that renders his detention unconstitutional." Sorio, 2026 WL 413530, at *9.

Accordingly, in light of Plaintiff's undisputed health issues, the undersigned finds that final factor weighs heavily toward finding that Petitioner's detention is excessive in relation to Respondent's legitimate interests.

**B. Conclusion as to Substantive Due Process Analysis**

Having reviewed the relevant factors, the undersigned finds that the nine-month duration of Petitioner's § 1226(c) detention and the absence of evidence pointing to delay on the government's part weigh against a finding that Petitioner's detention is punitive. However, on balance, the absence of evidence that Petitioner's presents a risk of danger or flight, the availability of ISAP conditions, and the uncontested evidence that Petitioner's untreated eye and testicular conditions have worsened in recent months, firmly outweigh the government's legitimate purposes in continuing to detain Petitioner. Therefore, the Court finds that Petitioner's detention is excessive in relation to its purpose, in violation of the Due Process Clause.[5]

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

---

[5] In the interests of judicial economy, the Court does not address Petitioner's Counts II and III.

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release with standard conditions of supervision. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**CONCLUSION**

Accordingly, Petitioner's motion to proceed in forma pauperis (ECF No. 3) is GRANTED. 1915(a).

Additionally, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count 1 (substantive due process) as follows:

   a. Respondents shall IMMEDIATELY RELEASE Petitioner YAMAN LNU-VI (A# 226-128-664) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.

   b. Respondents may place Petitioner on standard conditions of supervision upon release.

2. Petitioner's motion for temporary restraining order (ECF No. 2) be DENIED as moot.

3. Respondents' motion to dismiss (ECF No. 21) be DENIED.

4. The Clerk be directed to:

   a. Serve the Golden State Annex with a copy of this Order; and

   b. Enter judgment in Petitioner's favor and close the case.

5. Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of

that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE